IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–02323–REB–KMT

WESTMINSTER COMMONS DEVELOPMENT, LLC, a Colorado limited liability company,

      Plaintiff,

v.

MCELLIOT, LLC, an Arizaon limited liability company,
AZG WESTMINSTER, LLC, Arizona limited liability company,
DANIEL L. WARDROP, an individual,
DANIEL SHREEVE, an individual, and
DAVID BENSON, an individual,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter comes before the court on "Plaintiff's Motion to Compel Compliance with ADR Provision Contained in McElliot, LLC Operating Agreement" (Doc. No. 10 [Mot.], filed September 12, 2012).  Defendants filed their response on October 4, 2012 (Doc. No. 25 [Resp.]), and Plaintiff filed its reply on October 18, 2012 (Doc. No. 27 [Reply]).  The motion is ripe for recommendation and ruling.

## I.  FACTS

The following facts are undisputed for the purposes of this Motion.  On July 1, 2005, Plaintiff Westminster Commons Development, LLC ("Westminster") became a member of McElliot, LLC ("McElliot").  (Doc. Nos. 10-1 and 10-2 [Operating Agreement].)  On August 30,

2010, for reasons related to the prior existence of a loan default, Westminster and McElliot executed a Membership Interest Termination Agreement ("Termination Agreement"). (*Id.*, Ex. B.) The Termination Agreement provided for the termination of Westminster's membership interest. (*Id.*, Ex. B, ¶ 1.) The Termination Agreement also provided that, upon satisfaction of terms and conditions outlined therein, Westminster would have the right to reinstate its membership interest in McElliot. (*Id.*, ¶ 4.)

Westminster contends that, by November 9, 2010, it had met the terms and conditions, and thereby earned the reinstatement of its membership interest, but that Defendants refused to accept Westminster's performance or reinstate the membership interest. (*See* Mot.) Westminster contends that the Operating Agreement should be interpreted and applied so as to recognize its membership interest (and allow sharing of profits and losses). (*See id.*) Defendants contend it should not. (*See* Resp.)

## II.  LEGAL STANDARD

There is a strong federal policy favoring arbitration for dispute resolution, and this policy "requires a liberal reading of the arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n.27 (1983). This means that any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration. *See id.* at 24-25; *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995) ("all doubts are to be resolved in favor of arbitrability"). District courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363

U.S. 574, 582-83 (1960); s*ee also Fuller v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 88 F. Supp. 2d 1158 (D. Colo. 2000).  Additionally, the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") codifies a strong federal policy favoring the enforcement of arbitration agreements. Sections 3 and 4 of the FAA permit a Court to compel arbitration when one party has failed or refused to comply with an arbitration agreement.  9 U.S.C. §§ 3-4.[1]

The FAA applies to written arbitration agreements involving commerce.  9 U.S.C. § 2. Under the FAA, "commerce" means interstate commerce.  9 U.S.C. § 1.  The FAA is not limited to the interstate shipment of goods; the Act applies to contracts relating to interstate commerce. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)).  Where the scope of an agreement is to develop a commercial venture extending beyond state lines, the agreement is within the ambit of the FAA.[2]  *See Foster v. Turley*, 808 F.2d 38, 40–41 (10th Cir. 1986) (citing *Fairchild & Co. v. Richmond, F. & P. R.R.*, 516 F. Supp. 1305, 1310–11 (D.D.C. 1981)).

Section 3 of the FAA provides that if a suit is brought on the merits of a dispute covered by an arbitration agreement, "the Court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had

---

[1]None of the parties disputes that the FAA controls this case.

[2]The purpose of the Operating Agreement in this case is to acquire, develop, maintain and operate commercial property.  (Doc. No. 10-1 at 1.)  The parties to the Operating Agreement are from at least two different states.  (Doc. No. 3 [Compl.] at 4–5.)

in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.[3]  Arizona statute also requires

a stay of an action where arbitration has been ordered or when application has been made for

arbitration.  Ariz. Rev. Stat. §12-1502.D.; *Broemmer v. Otto*, 821 P.2d 204, 211 (Ariz. App.

1991).

### III.  ANALYSIS

Defendants oppose the motion to compel arbitration on the grounds that (1) McElliot is

not a "Member" of itself and therefore cannot be compelled to submit to the Operating

Agreement's Alternative Dispute Resolution ("ADR") provision and (2) the ADR provision does

not survive the expiration of the Operating Agreement.  (*See* Resp.)

### A.        *Whether McElliot Can Be Compelled to Submit to ADR Provision*

The ADR provision in the Operating Agreement provides that "[a]ny disputes between or

among Members relating to the interpretation of the provisions of this Agreement shall, prior to

the commencement of litigation, be settled according to the following procedures . . . ."  (Doc.

No. 10-2, § 11.16.)  The procedures set forth include: Designation of Facilitators, Selection from

Facilitator List, Dispute Notice, Mediation, Arbitration (under AAA rules), Standards of

Conduct, and Costs.  (*Id.* §11.16(a)–(h).)

The Defendants argue that the ADR provision applies only to "[a]ny disputes between or

among Members," and because an LLC is not a member of itself, McElliott cannot be compelled

---

[3]The parties agree that Arizona law applies in construing both the Operating Agreement
and the Termination Agreement.  (*See* Operating Agreement, Doc. No. 10-1, § 11.5.)

to submit to ADR under the Operating Agreement.  (Resp. at 4.)  Plaintiff counters that, under

Arizona law, an operating agreement signed by the members binds the LLC.  (Reply at 3–4.)

Here, the Operating Agreement defines a "Manager" as "any Person or Persons who

succeeds to the capacity of a manager of the Company pursuant to the provisions of Article 5 of

[the] Agreement.  Initially, Managers mean those persons identified in Section 5.3."[4]  (Doc. No.

10-1, § 2.19.)  It appears that three people have been appointed to act as managers.[5]  (*See* Doc.

No. 10-2 at 21.)  Arizona's Limited Liability Company Act provides that "[e]ach manager is an

agent of the limited liability company for the purpose of carrying on its business in the usual

way."  Ariz. Rev. Stat. § 29-654.B.2.[6]  Moreover, the Act provides that "[t]he act of each

manager, including the execution in the name of the limited liability company of any instrument,

for apparently carrying on in the usual way the business of the limited liability company . . .

binds the limited liability company . . . ."  § 29-654.B.3.

The Operating Agreement provides that management of the LLC is vested in the

managers.  (Doc. No. 10-1 at 20, § 5.1.)  Managers have the power to:

---

[4]Neither Plaintiff nor Defendants has provided pages 21 through 23 of the Operating Agreement.  (*See* Doc. No. 10-1 at 22–23; Doc. No. 25-1 at 22–23.)  Section 5.3 is within the missing pages.

[5]Neither Plaintiff nor Defendants has provided executed copies of the signature pages for the Operating Agreement.  (*See* Doc. No. 10-2 at 21–22; Doc. No. 25-1 at 45–46.)  However, neither party disputes that all parties listed on the signature pages signed the Operating Agreement.

[6]Plaintiff cites Ariz. Rev. Stat. § 29-654.A.2., which applies "[u]nless the articles of organization of a limited liability company provide that management is vested in one or more manager."  *Id.*  Section 29-654.B. applies in this case, where the articles of organization provide that management of the LLC is vested in one or more managers.  *See* § 9-654.B.

> Sue on, defend or compromise any and all claims or liabilities in favor of or against the Company, submit any or all such claims or liabilities to arbitration, foreclose, notice trustee sales and otherwise assert or enforce all rights and remedies to which the Company may be entitled pursuant to security agreements, deeds of trust, mortgages and other contracts and instruments to which it is a party or a beneficiary.

(*Id.*, § 5.1(d).)  Thus, pursuant to Arizona's Limited Liability Company Act, the LLC is bound to the Operating Agreement because the managers signed the Operating Agreement.

In support of their position, and because there is no Arizona case addressing this situation, Defendants cite *Mission Residential, LLC v. Triple Net Properties, LLC*, 654 S.E. 2d 888 (Va. 2008).  In *Mission*, the court determined a derivative claim brought by the plaintiff belonged to the LLC, rather than the LLC member, and the member plaintiff was not the real party in interest.  *See Mission*, 654 S.E. 2d at 891.  Here, however, Plaintiff does not bring derivative claims on behalf of the LLC.  In *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286 (Del. 1999), the court applied Delaware's statute governing LLCs to a case in which the members of an LLC, but not the LLC itself, signed the operating agreement.  *See Jaffari*, 727 A.2d at 291–93.  The court held that the LLC's failure to sign the operating agreement did not bar the defendants—the LLC and one of its members—from invoking the agreement's arbitration clause against a suit by the other member.  727 A.2d at 293.  The court explained that the members of the LLC were the real parties in interest and that the LLC was simply their vehicle. *Id.* at 293.  The court agrees with the reasoning in *Jaffari* and finds that here, where the plaintiff does not assert a derivative claim, the plaintiff is the real party in interest and can assert its claims against the LLC, whose managers signed the Operating Agreement.

**B.**      ***ADR Provision and Membership Interest Termination Agreement***

Next, Defendants argue that the ADR provision does not survive expiration of the

Operating Agreement because (1) the parties repudiated the ADR provision in the Operating

Agreement by signing the Termination Agreement; and (2) the dispute between the parties does

not arise under the Operating Agreement.  (Resp. at 5–11.)

**1.**      ***Whether Westminster Remains a Member of McElliot***

Defendants argue that after the parties terminated Plaintiff's membership interest in

McElliot so that it would have no further force or effect, the parties terminated Plaintiff's status

as a member of McElliot such that Plaintiff could no longer benefit from or invoke the ADR

provision.  (Mot. at 6.)  Plaintiff argues, however, that under the clear language of the Operating

Agreement, it remains a member.  (Reply at 5–6.)

The Operating Agreement defines "Members" as those persons identified on Exhibit A to

the Operating Agreement or any other persons who "succeeds" to that capacity.[7]  Doc. No. 10-1

at 8, §2.22.)  Arizona's Limited Liability Company Act defines a Member as "a person who is

admitted as a member" in an LLC.  Ariz. Rev. Stat. § 29-601(12).  Such a person remains a

member "until an event of withdrawal occurs."  *Id.*  This includes a "non-economic member"

who "(d)oes not own a member's interest in the company" or "(d)oes not have a right to

participate in or receive distributions of profits."  § 29-601(12)(a), (c).  A non-economic member

may continue to hold "other rights and privileges as prescribed by the . . . . operating

---

[7]It is undisputed that Plaintiff Westminster was a member of McElliot until the parties
executed the Termination Agreement.

agreement."  § 29-601(12)(d).  Sections 7.2 and 7.4 of the Operating Agreement provide only for

the "transfer" of a member's interest, including (a) a "transfer" to a new or substituted member

or (b) death, insanity, incompetency, or bankruptcy.  (Doc. No. 10-2 at 3–4, § 7.2 and 7.4.)  "No

Member may withdraw from the Company" except under the conditions permitted in

Sections 7.2 or 7.4.  (Doc. No. 10-2 at 4, § 7.5.)  None of these events has occurred.  Thus, the

court agrees with Plaintiff that it remains a member of the LLC.

Quoting the definition of "interest" from the Operating Agreement, Defendants also

argue that the parties defined the term "interest" expansively, to encompass not just a member's

financial ownership in McElliot, but a member's very status as a member.  (Resp. at 6.)  The

Operating Agreement provides that

> "Interest" means the entire interest of a Member in the Company at any particular
> time, including the Member's Capital Percentage and Participating Percentage,
> the right of such Member to any and all benefits to which a Member may be
> entitled as provided herein, together with all obligations of a Member to comply
> with all the terms and provisions hereof.

(Doc. No. 10-1 at 8, § 2.18.)  Thus, Defendants argue that termination of Plaintiff's "membership

interest" effected a withdrawal of Plaintiff as a member of McElliot.  (Resp. at 6.)  Plaintiff

argues that the defendants have failed to follow the "basic rule of contract interpretation that 'all

parts of a contract must be read in harmony to determine its meaning.' "  (Reply at 6 [quoting *In

re Bombay Realty Corp. v. Magna Carta, Inc.*, 790 N.E. 2d 1163, 1165 (N.Y. 2003)].)  Plaintiff

also argues that Arizona's Limited Liability Company Act provides that a member's interest

"means a member's share of the profits and losses . . . and the right to receive distributions of . . .

assets."  Ariz. Rev. Stat. § 29-601.13.  Thus, the plaintiff contends that the Act's definition

includes only economic benefits and obligations of a member, and that Defendants' attempts to include non-economic rights held by a member is too broad and contrary to law.  (Reply at 7.)

Defendants acknowledge the Act's definition as consisting only of a member's share of profits and losses.  (Resp. at 6, n.2.)  However, Defendants argue that the Act gives members the freedom to "adopt an operating agreement containing provisions they deem appropriate," including "any provision that is not contrary to law and that relates to the business of the limited liability company . . . and the rights, duties, or powers of its members . . . ."  (*Id.* [citing Ariz. Rev. Stat. § 29-682(A), (B)].)  The court agrees with the defendants that the Act allows the members of a limited liability company to define the term "interest" more broadly than its own definition.  Nevertheless, the fact remains that, under the express terms of the Operating Agreement, as explained *supra*, Plaintiff Westminster did not withdraw from the LLC under the conditions permitted in Sections 7.2 or 7.4 of the Operating Agreement.  (Doc. No. 10-2 at 4, § 7.5.)  Thus, Plaintiff remains a member of McElliot and can be compelled to arbitrate.

### 2.  *Whether Dispute Arises Under Operating Agreement or Termination Agreement*

Defendants also argue that Plaintiff's claims relate to the Termination Agreement and not the Operating Agreement.  (Resp. at 8–11.)  Specifically, Defendants argue the only right at issue is a right Westminster allegedly obtained under the Termination Agreement because "the current dispute does not relate to any events that occurred prior to the parties' Termination Agreement . . . ."  (*Id.* at 9–10.)

As previously noted, the ADR provision in the Operating Agreement provides that "[a]ny disputes between or among Members relating to the interpretation of the provisions of this Agreement shall, prior to the commencement of litigation, be settled according to the following procedures . . . ." (Doc. No. 10-2, § 11.16.)  Plaintiff argues that, in the Complaint, it alleges Defendants' refusal to recognize rights, privileges, and benefits associated with its membership capacity and membership interest constitutes a breach of several duties, express or implied, that arise under the terms of the Operating Agreement.  (*Id.*)  Plaintiff argues these rights, privileges and benefits include (a) the right to enforce the ADR provision (Compl., ¶¶ 98–101); and (b) the right to enforce its economic interest in the LLC.  (*Id*., ¶¶ 103–04.)  Upon a review of the Complaint, the court agrees with Plaintiff.  Plaintiff alleges (a) McElliot and the Managers' duties of good faith and fair dealing with regard to the exercise of powers and performance of duties owed under the Operating Agreement are owed or have been breached (*id.*, ¶¶ 83–84, 86–87, and 119); and (b) the Managers' duties to refrain from negligence are owed or have been breached (*id.* ¶¶ 84, 87, 131–35; Operating Agreement §§ 5.3, 5.7(b), 5.9.)  This court finds these allegations and claims – pleaded as part of the First, Second, Fourth, and Sixth Claims for Relief[8] – involve matters that relate to the interpretation and application of the Operating Agreement and "arise under" the Operating Agreement.

---

[8]The court notes that Plaintiff has pleaded a separate claim related to alleged breach of the Termination Agreement.  (*See* Compl., Third Claim for Relief, ¶¶ 106–15.)

Thus, because any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23 n.27, this court respectfully

**RECOMMENDS** that "Plaintiff's Motion to Compel Compliance with ADR Provision Contained in McElliot, LLC Operating Agreement" (Doc. No. 10) be **GRANTED**; the court further

**RECOMMENDS** that "Plaintiff's Motion to Stay Proceedings Pending Completion of Alternative Dispute Resolution" (Doc. No. 11, filed September 12, 2012) be **GRANTED**; the court further

**RECOMMENDS** that "Defendant AZG Westminster, LLC's Petition for an Order to Show Cause Why Plaintiff's Lien Should Not Be Declared Invalid" (Doc. No. 7, filed September 6, 2012) and "Defendants' Motion to Dismiss" (Doc. No. 8, filed September 6, 2012) be **DENIED** without prejudice to refile, if necessary, after completion of arbitration.[9]

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will

---

[9]Briefing on these motions has been stayed, pursuant to the parties' request, until resolution of the motion to compel arbitration.  (*See* Doc. Nos. 12, 13, 22, 23.)

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 31st day of July, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

12